FILED
OCT 1 1 2006
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALIREZA BAKHTIARI, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI, a corporation, | ) Jury Trial Demanded |
| Serve: Dr. Elson S. Floyd (Summons Waived) President, University of Missouri System 321 University Hall Columbia, Missouri 65211, | ) |
| and | ) 4:06CV01489ERW |
| MS. GENE C. BEYER, (in personal capacity) | ) |
| Serve: International Affairs Office, University of Missouri-Rolla 103 Norwood Hall 1870 Miner Circle Rolla, Missouri  65409-6356 | ) |

## COMPLAINT

Plaintiff, Alireza Bakhtiari, by and through his undersigned counsel, sets forth the Petition, as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff, Alireza Bakhtiari, **is a citizen of Iran**, resident of the state of Missouri and a former Ph.D. student and employee at the University of Missouri-Rolla.

2.      Defendant, Ms. Gene C. Beyer (in personal capacity) is a resident of the state of Missouri and is, and at all relevant times was, the Assistant Director of the International Affairs Office for the University of Missouri at Rolla.

1

3. Defendant, the Curators of the University of Missouri, is a perpetual corporation created by section 172.020 of the Revised Statutes of the state of Missouri. This Defendant has the power to sue and be sued.

4. On October 22, 2001, the Chemistry Department at the University of Missouri-Rolla informed the Plaintiff that he was being recruited as a Graduate Teaching Assistant. The Chemistry Department is a subdivision of the College of Arts and Sciences at the University of Missouri-Rolla.

5. On January 11, 2002, Plaintiff reported to the Chemistry Department and began working as a Graduate Teaching Assistant.

6. As an employee, Plaintiff reported to Dr. David E. Hoiness- (Lecturer) Assistant Chairman of Chemistry Department. The specific function of Plaintiff's job under the title of "teaching assistant" varied every semester, based on the timely needs of the Chemistry Department. The specificity of the function in each semester was administered, managed and determined by Dr. Hoiness.

7. At the end of 2003, "The Committee on Effective Teaching and Faculty Awards" of the University of Missouri at Rolla determined the Teaching Effectiveness Factors (TEF) for the Faculty and Teaching Assistants in the university including the Chemistry Department. Plaintiff scored a 3.2, while the average for the whole campus was 2.5 and 2.9 for the Chemistry Department. Plaintiff's written evaluations also describe him as excellent as a chemistry instructor.

8. From January 2002 through September 2003, Plaintiff observed that the method and the condition of teaching of freshman chemistry courses and laboratories were decreasing the interest of undergraduate students in chemistry and related subjects.

2

Plaintiff reported his observations to Dr. Hoiness. In the Fall Semester of 2003, Plaintiff introduced innovations to improve student interest in chemistry. At the end of Fall semester 2003, as a part of his proposal, Plaintiff conducted a survey of 200 undergraduate students who took the freshman chemistry courses and laboratories in that semester, and the summary of the survey results was reported to Dr. Hoiness.

9. Based on Plaintiff's initiative, Dr. Hoiness defined his specific function for winter semester of 2004. This function was to restructure and redesign the syllabus and the content of Freshman Chemistry Laboratory course (Chemistry 002 Lab.). Plaintiff began employment in this function at the beginning of the winter semester of 2004 (January 12, 2004).

10. On May 16, 2002, USCIS ordered the International affairs offices at Universities and Colleges through out the country to form the SEVIS Data Base according to 8 CFR 214.3 and 8 CFR 214.3.

11. Defendants did not meet the above deadline and plaintiff's name and information was negligently missed out in the SEVIS database.

12. In Mid-October 2003, Plaintiff was informed by one of his colleagues that an electronic email message had been sent to some of the campus community members about citizens of certain countries. The topic of the message was "Special Registration".

13. In a matter of few minutes of hearing the message mentioned in paragraph 13, Plaintiff reported to the International Affairs Office of the University of Missouri at Rolla ("UMR-IA") and informed them that he had not received the above-mentioned email and inquired as to what it was about. The staff of the International Affairs Office including Defendant Gene Beyer investigated Plaintiff's inquiry. They informed him that

3

they were still in the process of completing their SEVIS Database and apologized for having negligently not informed him of the above requirement.

14. On August 13, 2003 Defendant Beyer announced in a news release that the UMR-IA Office has met the August 1, 2003 deadline in completing the SEVIS Data Base.

15. In numerous personal meetings and contacts, Plaintiff complained to defendant Beyer for her untruthful news release since Plaintiff's name and information was missing in the SEVIS data base. So the UMR-IA Office could not have met the deadline of August 1, 2003. Therefore UMR-IA was not in compliance with the Codes of Federal Regulation governing their requirements, including but not limited to *8 CFR 214.3* and *8 CFR 214.4.*

16. Plaintiff informed Defendants in numerous occasions that he was persistently gathering evidence to present to The Department of Homeland Security ("DHS") in regards to Defendant's negligence to comply with the federally mandated regulations.

17. According to Order of at the relevant time Attorney general of the United States, Plaintiff was required to report to U.S. Citizenship and Immigration Services (hereafter mentioned as USCIS) every year on the anniversary of his arrival to the US. Having missed his first anniversary report to USCIS due to the above-mentioned negligence of the defendants, defendants suggested the Plaintiff to report to USCIS-St. Louis office on the second anniversary of his arrival to the United States (January of 2004).

18. On October 30, 2003, the International Affairs office of the University of Missouri at Rolla provided the plaintiff with a letter of explanation, explaining their negligence on formation of the appropriate SEVIS Database according to 8 CFR 214.3, and also admitting to making the effort to inform the campus community of the above Order through an electronic list-serv which was not inclusive of all. *See* Plaintiff's Exhibit A.

19. Before the end of 2003 the above "Special Registration" Order was removed from the federal register as a requirement for foreign students.

20. On January 21, 2004, Plaintiff and his legal representative visited the USCIS-St. Louis Office to inquire about and pursue Plaintiff's permanent residence application, which was pending at the time.

21. In the above mentioned visit, Plaintiff and his legal counselor informed the staff of the USCIS Office in St. Louis of the negligence of the International Affairs Office of the University of Missouri at Rolla which caused him to miss the "special registration" requirement on January of 2003 which had been in effect for most of 2003.

22. The USCIS special agent who was investigating the above negligence, informed Plaintiff that he has been earlier that day (January 22, 2004) contacted by Defendant Gene Beyer by telephone. Defendant Gene Beyer had contacted the USCIS special agent to provide him with information.

23. In this phone conversation, Defendant Beyer stated a series of slanderous remarks about the Plaintiff including accusing him of purveying pornography, stalking and sexual harassment. In the same conversation, Defendant Beyer denied the negligence of the Office of the International Affairs.

24. On January 21, 2004, the special agent determined that Plaintiff was out of status for having missed the special registration requirement on January 2003 as ordered by at the time the US Attorney General. Plaintiff was detained and transferred to Mississippi County Detention Center.

25. On January 26, 2004, Defendant Gene Beyer authored and published a libelous letter (memorandum) to USCIS about Plaintiff. In this publication defendants intentionally author numerous false assertions (at least in 15 particular statements in this publication) which are all defamatory and damaging to Plaintiff. Defendants reported those as actual facts in writing and also verbally to USCIS. *See* Exhibit B.

26. Exhibit B, Page 1, Paragraph 5 asserts: *"During the conversation he stated that he was an applicant for PR status. He evaded the question of exactly where in the process he was. Finally, he told us that his "immigration lawyer" (a catholic charities volunteer) advised him not to file the PR application at this time since he and his wife were separated."*

27. Exhibit B, Page 1, Paragraph 5 asserts: *"We tried to determine if it was a legal separation. He stated that his wife has returned to her parents, city of Cape Girardeau after she had filed a spousal abuse charge against him. He said that the charge stemmed from his physical abuse against her when she refused to have an abortion."*

28. Exhibit B, Page 2, Paragraph 1 asserts: *"On the subject of NSEERS he stated that he had not received any of the emails we had sent out. I asked him why he has removed his name from any of the listservs that had carried information about NSEERS. He stated that he taught chemistry labs at UMR and he did not want any of*

*the students to contact him. I reminded him that NSEERS reporting was a personal responsibility not an institutional one."*

29. Exhibit B, Page 2, Paragraph 2 asserts: *"In late December 2003 I answered the telephone at our office and a person informed me anonymously that since the NSEERS program was terminated he believed that those who were requited to report no longer had to do so. I recognized his voiced, acknowledged his identity, and told him that information that we have received indicated that those who previously were required to report under NSEERS should continue to report. As in all previous conversations with this individual, we advised him to visit immigration for the most accurate information on NSEERS requirements. I asked him if he had yet reported for the first time. He stated that he had not."*

30. Exhibit B, Page 2, Paragraph 3, Bulleted Item 1 asserts: *"He went to great lengths to remove himself from the listserves, and made repeated checks to make sure that he was not re-subscribed in the listserves."*

31. Exhibit B, Page 2, Paragraph 3, Bulleted Item 2 asserts: *"Even when personally and individually advised to report in October, he still did not meet his NSEERS reporting requirements"*

32. Exhibit B, Page 2, Paragraph 4 asserts: *"I did not question him about how his PR application had transpired since he had informed his department chair that he and his wife were divorced. I immediately warned the Dean's office that he would visit them."*

33. Exhibit B, Page 2, Paragraph 5 asserts: *"Although Mr. Bakhtiari's outward posture is polite to the point of being servile, he easily erupts into unstable behavior that has caused concern across the UMR campus."*

34. Exhibit B, Page 2, Paragraph 5, Bulleted Item 1 asserts: *"Complaints with campus police have been filed against him for predatory sexual harassment stalking of young undergraduate girls in residence halls and Christian religious youth facilities."*

35. Exhibit B, Page 3, Paragraph 1, Bulleted Item 1 asserts: *"He has endangered the well-being of students and staff in chemistry labs by refusing to follow federally-mandated guidelines for safety and security."*

38. Exhibit B, Page 3, Paragraph 1, Bulleted Item 2 asserts: *"He has intimidated and implicitly threatened faculty member of chemistry department. Staff and faculty are concerned about his retaliation against them."*

39. Exhibit B, Page 3, Paragraph 1, Bulleted Item 3 asserts: *"At a campus discipline meeting on December 2003 in which he was being investigated for using campus computers for downloading violent pornography and stalking, his behavior was so violent that our police chief believed that physical actions maybe required."*

40. Exhibit B, Page 3, Paragraph 1, and Bulleted Item 3 asserts: *"Our police chief believed that physical actions maybe required."*

41. Exhibit B, Page 3, Paragraph 1, Bulleted Item 4 asserts: *"Since November 2003 campus faculty and staff regularly request police presence in meeting with him."*

42. Exhibit B, Page 3, Paragraph 2 asserts: *"Because of suspicious and unstable combination of characters Mr. Bakhtiari has demonstrated our office believes that we should bring this student to your attention."*

43. Plaintiff's Exhibit D, attached hereto and incorporated herein, shows that on January 22, 2004, Special Agent Jeffery M. Othic was contacted by telephone at his office at the St. Louis USCIS by Defendant Gene Beyer and the slanderous remarks were made by the Defendant. In this phone conversation, Beyer falsely reported that Plaintiff had internal issues at UMR because of his aggressive manner and teaching practices. In addition, Beyer falsely reported that Plaintiff was being investigated for stalking.

44. At the time, Plaintiff's wife and daughter, who are citizens of then United States, were relying on the Plaintiff as the provider of the family. The fear of deportation and various religious persecutions and prosecutions expecting the Plaintiff in his home country, and the above malicious, slanderous and libelous remarks by the defendants about the plaintiff were immeasurably inflicting and fatiguing him emotionally as he was in incarceration of the USCIS in Mississippi County Detention Center.

45. Plaintiff pursued and practiced his constitutional rights by collecting evidence and presenting the evidence to DHS in regards to Defendants being in out of compliance with the federally mandated regulations. In a retaliatory fashion, by Defendants, on January 21, 2004 Plaintiff's employment was terminated and his due process rights were fully denied, on January 22, 2004 he was defamed and on January 26, 2004 he was libeled to DHS.

46. The causes of action occurred by Defendants (in retaliatory manners) are termination of Plaintiff's employment, denial of all his due process rights, intentional spoliation of evidence, libel and defamation. These actions are outrageous conducts. The above causes of action are in part being heard in a current separate compliant in this Division of the US District Court. (Cause No. 4:04CV01071 AGF).

47. As a result of the Defendants outrageous conducts, on February 23, 2004, Plaintiff suffered an anxiety heart attack, resulting in severe heart pain, seizure and blackout. He was urgently treated in a hospital.

48. On February 2, 2004, Plaintiff's attorney asked the Office of the General Counsel of the University of Missouri to provide her with a statement describing the status of the Plaintiff and the veracity of any accusations pending. In response, the Office of the General Counsel provided a letter which affirmatively stated that there had not been any criminal investigations pending about the Plaintiff. *See* Exhibit C.

49. On January 15, 2004, the Office of Student Affairs of the University of Missouri at Rolla announced that there had not been any informal or formal dispositions pending or being taken against the plaintiff.

50. On February 17, 2004, Plaintiff was active and enrolled as a PhD student at the University of Missouri-Rolla but temporarily away from the campus, detained by the USCIS. On February 17, 2004, defendants froze the IT/Computer account of the plaintiff which included his files and emails correspondence. Since that date plaintiff has made frequent requests in phone calls and in writings for access including forensic data recovery privileges to the above account. All these requests were denied.

51. On May 19, 2004, Defendants deleted and eliminated the plaintiff's emails and files in his IT account in the University of Missouri-Rolla in order to frustrate and obstruct further discovery, forensic data recovery and EEOC investigation which they were informed was under way.

52. Plaintiff is currently under long-term medication and treatment for the heart medical damages caused by the defendants.

53. As well as the above bodily and severe damage caused by Defendants, Plaintiff has suffered constant ongoing humiliation and mental anguish since the first action of defamation occurred on January 22, 2004 until now.

## STATUTE OF LIMITATION

54. On December 30, 2005, Plaintiff filed a compliant for the current counts of pleading in the Circuit Court of the City of St. Louis, in the state of Missouri.

55. On July 17, 2006, the above compliant was ordered to be transferred to the Circuit Court of Phelps County, in the State of Missouri.

56. On August 18, 2006 Plaintiff filed a Notice of Voluntary Dismissal and in a non-suit action voluntarily withdrew the complaint filed on January 29, 2006.

57. According to the Missouri savings statute (RS.Mo 516.230), Plaintiff can refile his action within one year from the non-suit action.

## JURISDICTION AND VENUE

58. The causes of action in the instant question occurred within the geographical limitations of Eastern District of Missouri. Plaintiff is a citizen of Iran and Defendants are citizens of the United States. This Court has proper venue and jurisdiction over this matter.

## SOVEREIGN IMMUNITY

59. Defendants' actions in defaming and libeling Plaintiff have been malicious, retaliatory and for the corporate interests of the Defendants. These actions are proprietary functions.

60. According to the rulings of the Missouri Supreme Court, Defendants do not enjoy sovereign immunity in proprietary functions and any sovereign immunity argument would be irrelevant.

61. Alternatively, if defendants do claim relevance of sovereign immunity, they have waived sovereign immunity by purchasing liability insurance policies covering the very causes of actions presented in this case.

## COUNT I - LIBEL

62. Plaintiff hereby re-alleges the allegations contained in Paragraphs 1 though 60 as though fully set forth herein.

63. The Memorandum written by the defendants **(Exhibit B)** is out of the scope of any privilege.

64. The statements are intentional, untruthful, material assertions, which are being represented affirmatively as facts to the Department of Homeland Security.

65. Defendants neglected to perform their duties according to 8CFR214.4 and 8CFR214.3.

66. The purpose of the libelous publication is malicious and retaliatory and is to accelerate and confirm the deportation of the Plaintiff from the United States, which would eliminate any further investigation on the defendants' negligence.

WHEREFORE, Plaintiff, Alireza Bakhtiari, requests that this Court enter judgment against Defendants for actual damages, punitive damages, costs of suit, attorney fees and for such additional relief as is just and proper under the circumstances.

## COUNT II - SLANDER

67.     Plaintiff hereby re-alleges the allegations contained in Paragraphs 1 though 65 as though fully set forth herein.

68.     In the phone conversation between the investigating special agent of the Department of the Homeland Security and defendants, Ms. Gene Beyer made numerous intentional falseful assertions, slandering plaintiff to the Department of Homeland Security. (**See Exhibit D**).

69.     Defendants neglected to perform according to 8CFR214.4 and 8CFR214.3. The purpose of the slander is malicious and retaliatory and to accelerate the deportation of the Plaintiff from the United States, which would eliminate any further investigation on the defendants' negligence.

WHEREFORE, Plaintiff, Alireza Bakhtiari, requests that this Court enter judgment against Defendants for actual damages, punitive damages, costs of suit, attorney fees and for such additional relief as is just and proper under the circumstances.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL STRESS

70.     Plaintiff hereby re-alleges the allegations contained in Paragraphs 1 though 68 as though fully set forth herein.

71.     On January 22, 2004, Plaintiff was incarcerated by the USCIS for having missed his first special registration in January 2003 due to defendants' negligence.

72.     On January 21, 2004, in retaliation, Defendants terminated Plaintiff's employment and fully denied his due process rights. On January 22, 2004, maliciously, Defendants slandered the Plaintiff to the USCIS in the phone conversation between

defendant Beyer and the USCIS special agent. On January 26, 2004, maliciously, Defendants libeled the plaintiff to the USCIS in the publication of Exhibit B.

73. Departure from his wife and daughter, deportation to his home country and facing fatal persecution and prosecution, defamation, slander and libel, in addition to other numerous retaliatory actions ( See Cause No. 4:04CV01071 AGF) which are all caused by defendants intensified and accumulated massive emotional stress in the Plaintiff which eventually caused an anxiety heart attack with sever heart pain, seizures and blackouts on February 23, 2004 while Plaintiff was in the Mississippi County Detention Center.

WHEREFORE, Plaintiff, Alireza Bakhtiari, requests that this Court enter judgment against Defendants for actual damages, punitive damages, costs of suit, attorney fees and for such additional relief as is just and proper under the circumstances.

## REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

74. Plaintiff hereby re-alleges the allegations contained in Paragraphs 1 through 72 as though fully set forth herein.

75. Plaintiff has been defamed by Defendants and untruthful assertions of Defendants about Plaintiff are on the record in the USCIS.

76. Plaintiff has been harmed by Defendants in that his immigration status has been threatened.

77. Defendants should be directed to write a corrected letter to the USCIS redacting the aforementioned comments.

WHEREFORE, Plaintiff, Alireza Bakhtiari, requests that this Court enter an Injunction against Defendants directing them to file a corrected letter to the USCIS and for such further relief as is just and proper under the circumstances.

FOX, GOLDBATT & SINGER, P.C.

/s/ Marshall R. Hoekel
Marshall R. Hoekel, #33117
720 Olive, Suite 1901
St. Louis, MO 63101
(314) 231-4100 – Office
(314) 241-5078 – Facsimile
Attorneys for Plaintiff Alireza Bakhtiari

### CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2006, I electronically filed the foregoing with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Nancie D. Hawk, Counsel for the University of Missouri System, 227 University Hall, Columbia, Missouri 65211.

/s/ Marshall R. Hoekel

15