UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALIREZA BAKHTIARI,                    )
                                      )
            Plaintiff,                )
                                      )
        vs.                           )        No. 4:06-CV-01489 (CEJ)
                                      )
                                      )
GENE C. BEYER,                        )
                                      )
            Defendant.                )

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for leave to file his first amended complaint. Defendant opposes the motion, and the issues are fully briefed.

**I. Legal Standard**

Plaintiff seeks leave to file a first amended complaint pursuant to Rule 15(a), Fed. R. Civ. P. The Case Management Order specified that amendment of pleadings would be allowed until October 9, 2007. That date had passed when plaintiff filed the motion for leave to amend on December 27, 2007. Plaintiff's motion thus is appropriately viewed as a request to modify the Case Management Order under Rule 16(b), Fed. R. Civ. P., and plaintiff must demonstrate "good cause" for the amendment sought. "Then, if good cause has been shown," the party seeking to amend "must also demonstrate that the amendment complies with the requirements of Rule 15(a)." Connell v. KLN Steel Prod. Co., Ltd., 2006 WL 1120514 (N.D. Ill. 2006). See also Schenk v. Chavis, 2008 WL 123980, at *2

(8th Cir. 2008); <u>and</u> <u>In re Milk Products Antitrust Litigation</u>, 195 F.3d 430, 437 (8th Cir. 1999).

A district court should freely grant leave to amend the pleadings when justice so requires. Rule 15(a), Fed. R. Civ. P. A court may properly deny leave to amend a complaint, however, when the amendment would be futile. <u>Popoalii v. Correctional Medical Services</u>, 512 F.3d 488 (8th Cir. 2008). When a court denies leave to amend a complaint "on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand" a motion to dismiss pursuant to Rule 12, Fed. R. Civ. P. <u>In re Senior Cottages of America, LLC</u>, 482 F.3d 997, 1001 (8th Cir. 2007) (citations omitted).

## II. Discussion

Defendant contends that allowing the amendment would be futile, because the proposed additional counts fail to state a claim upon which relief can be granted.

Plaintiff seeks to add the following counts: (1) Count IV, alleging that plaintiff had property and due process rights under 8 C.F.R. §§ 214.3 and 214.4, and defendant's failure to comply with those provisions deprived him of his rights, a violation of 42 U.S.C. § 1983; (2) Count V, alleging that defendant wrongfully, maliciously, and intentionally interfered with proceedings at the Department of Homeland Security (DHS) and the Immigration Court, thus depriving plaintiff of his alleged property and due process rights, a violation of 42 U.S.C. § 1983; and (3) Count VI, titled "tortious interference," alleging that plaintiff had due process

and property rights in proceedings before DHS and the Immigration Court, and defendant wrongfully, maliciously, and intentionally interfered with those proceedings.[1]

**Count IV**

Count IV of the proposed amended complaint alleges that plaintiff had "property rights and constitutional rights in his due process" under 8 C.F.R. §§ 214.3 and 214.4. Pl. Mot. at ¶ 74. Those regulations concern the Student and Exchange Visitor Information System (SEVIS), "a database that tracks the entry, stay, and exit of foreign students in the United States." Global Business Immigration Handbook § 15:8 (June 2007). The SEVIS program requires "institutions of higher education and sponsors of exchange visitor programs to report to DHS [the United States Department of Homeland Security] information on their foreign student populations." Immigration Procedures Handbook § 2:33.[2]

---

[1] As defendant notes, throughout the amended complaint, plaintiff refers to "defendants" in the plural, but after the dismissal of the complaint as to the Curators of the University of Missouri and defendant Beyer in her official capacity, the only defendant in this action is Ms. Beyer in her personal capacity.

[2] In addition to the general reporting requirements for schools, special registration requirements apply to students from some designated countries. Id. Citizens of Iran, among other countries, must provide information to DHSs (including passport numbers, date of birth, U.S. and foreign addresses, etc.) and be photographed and fingerprinted. Immigration Law and Business § 2:13. The information is then stored in another database, the National Security Entry-Exit Registration System (NSEERS). Id. The NSEERS program was initiated in June 2002, with adjustments to the program continuing through December 2003. Immigration Procedures Handbook § 11:15.

The regulations that plaintiff cites, 8 C.F.R. §§ 214.3 and 214.4, prescribe the process by which schools and other educational institutions gain and lose government approval for attendance by non-immigrant students (those who wish to attend school in, but do not intend to immigrate to, the United States). Section 214.3 sets forth procedures for schools to petition the government to participate in the SEVIS program and imposes reporting requirements for participating schools. Section 214.4 provides that a school's failure to follow the mandated procedures may result in the withdrawal of government approval for participation in the SEVIS program and attendance by nonimmigrant students. Sections 214.3 and 214.4 do not impose any requirements directly upon nonimmigrant students, but only upon the school and school officials.

Plaintiff claims that the SEVIS regulations create a property interest, the deprivation of which violates 42 U.S.C. § 1983. In essence, plaintiff asserts that he has a due process right to have school officials comply with the SEVIS regulations. Defendant argues that plaintiff has asserted merely a violation of federal law, not a violation of a federal right, and thus fails to state a claim upon which relief can be granted.

Section 1983 of Title 42, United States Code, provides a cause of action for the deprivation of constitutional rights by any person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 638 (1980). The "essential elements of a § 1983 claim are: (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation

4

to violate the constitutional right." <u>Kuha v. City of Minnetonka</u>,
365 F.3d 590, 606 (8th Cir. 2003) (as amended April 27, 2004).

To seek redress through Section 1983, a plaintiff must allege
the violation of a federal right, not merely "a violation of
federal law." <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997). The
Court examines three factors "when determining whether a particular
statutory provision gives rise to a federal right." <u>Id</u>.

> First, Congress must have intended that the provision in
> question benefit the plaintiff. . . . Second, the plaintiff
> must demonstrate that the right assertedly protected by the
> statute is not so 'vague and amorphous' that its enforcement
> would strain judicial competence. . . . Third, the statute
> must unambiguously impose a binding obligation on the States.
> In other words, the provision giving rise to the asserted
> right must be couched in mandatory, rather than precatory,
> terms.

<u>Id</u>. (internal citations omitted).

Cases analyzing whether a statute provides an implied private
right of action "should guide the determination of whether a
statute confers rights enforceable under" Section 1983. <u>Gonzaga
Univ. v. Doe</u>, 536 U.S. 273, 286 (2002). "[W]here the text and
structure of a statute provide no indication that Congress intends
to create new individual rights, there is no basis for a private
suit, whether under § 1983 or under an implied right of action."
<u>Id</u>. at 286.  Thus, although Section 1983 does not require that a
plaintiff show Congress intended to create a private remedy, "the
initial inquiry – determining whether a statute confers any right
at all – is no different from the initial inquiry in an implied
right of action case[:] to determine whether or not a statute

5

'confer[s] rights on a particular class of persons.'" Id. at 284-85, quoting California v. Sierra Club, 451 U.S. 287, 294 (1981).

Regulations alone cannot create private rights of action. Buck v. American Airlines, Inc., 476 F.3d 29, 33 (1st Cir. 2007), citing Alexander v. Sandoval, 532 U.S. 275, 291 (2001). The source of the right must be a statute. Id. The Court analyzes both the "specific statutory provision at issue" and the "entire legislative enactment" to determine whether the statute creates an enforceable right within the meaning of Section 1983. Marshall v. Switzer, 10 F.3d 925, 928 (2d Cir. 1993).

The statutory basis for the SEVIS regulations is Section 101(a)(15)(F)(I) of the Immigration and Nationality Act (codified at 8 U.S.C.A. § 1101(a)(15)(F)(I) (2003)), which defines classes of non-immigrant aliens, including the following:

> an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established [educational institution] . . . approved by the Attorney General . . . which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn.

Id.

The statutory text shows that Section 101(a)(15)(F)(I) does no more than define a class of non-immigrant students. As such, it cannot be said that Congress intended the provision to benefit that class of nonimmigrant students. "A section that merely defines should not be relied upon to show that Congress intended to create

a private right of action to enforce what is included in or excluded from the definition." U.S. v. Richard Dattner Architects, 972 F.Supp. 738, 743-44 (S.D.N.Y. 1997) (citations omitted).

The statutory scheme of the Immigration and Nationality Act (INA) does not indicate Congressional intent to benefit a class of immigrants. The INA "is a regulatory statute that establishes the circumstances under which people may be admitted to the United States." Id. at 743. See Collyard v. Washington Capitals, 477 F.Supp. 1247, 1255 (D. Minn. 1979) (citations omitted) (finding the Immigration and Nationality "Act is merely a regulatory statute administering the immigration and naturalization of aliens [and] does not create a special class of persons within the United States who are to be benefited by the controls on immigration."); and Dowling v. United States, 476 F.Supp. 1018, 1020 (D.Mass. 1979) (finding that an INA section defining nonimmigrant employees is "merely a definitional section" which does not create a private right of action, and as it "contemplates administration by the Attorney General, not private citizens, it cannot be viewed as authorizing a private right of action.").

The Court finds that neither the SEVIS regulations nor the enabling legislation on which they are based demonstrate that Congress intended to create a private right of action or intended to benefit a class of which plaintiff is a member. Thus, neither the INA nor the regulations gives rise to a federal right. The plaintiff's proposed Count IV fails to state a claim upon which

relief can be granted, and the Court will deny leave to amend the complaint to add that count.

**Count V**

Plaintiff seeks to amend his complaint to include Count V, in which he alleges that defendant interfered with his "property rights and constitutional rights in his due process." Pl. Mot. at ¶ 77. The Court construes this as an allegation that plaintiff had property and due process rights in proceedings before DHS and the Immigration Court, the defendant wrongfully interfered with those proceedings, and that the interference was a violation of 42 U.S.C. § 1983. The Court construes the allegation as made pursuant to the due process clause of the Fourteenth Amendment. Although plaintiff does not state in Count V the factual basis for the alleged interference that worked a deprivation of due process and property rights, elsewhere in the proposed amended complaint he alleges that defendant defamed him in communications with the United States Citizenship and Immigration Service (CIS), causing him humiliation, mental anguish, and physical injury.[3]

The Fourteenth Amendment "prevents states from depriving individuals of life, liberty, or property without due process of law." Gardner v. Wansart, 2006 WL 2742043 (S.D.N.Y. 2006) (slip op.). To state a claim for a procedural due process violation under

_____

[3] Defendant Beyer made the statements in communications regarding plaintiff's immigration status; since the time of the communications, plaintiff states that CIS has granted his application for permanent residency status.

Section 1983, the plaintiff must establish that he has been deprived of one of those protected interests. Id.

Libel and slander are types of defamation. Kennedy v. Jasper, 928 S.W.2d 395, 399 (Mo. App. 1996). "A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. (citations omitted). "Plaintiff must establish the following in a defamation claim: (1) publication[4] (2) of a defamatory statement (3) that identifies the plaintiff (4) that is false, (5) that is published with the requisite degree of fault and (6) damages the plaintiff's reputation." State ex rel. BP Products North America Inc. v. Ross, 163 S.W.3d 922 (Mo. 2005).

"[R]eputation alone is not a constitutionally protected liberty or property interest." Cutshall v. Sundquist, 193 F.3d 466, 479 (6th Cir. 1999), citing Paul v. Davis, 424 U.S. 693, 701 (1976). See also Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); and Neal v. Fields, 429 F.3d 1165 (8th Cir. 2005). "Only where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process protection triggered." Cutshall, 193 F.3d at 479. Defamation is actionable as a state-law tort. Paul v. Davis, 424 U.S. at 697, 700.

---

[4] "A publication is simply the communication of defamatory matter to a third person." Nazeri v. Missouri Valley College, 860 S.W.2d 303, 313 (Mo. banc 1993).

9

Plaintiff asserts that following defendant's communications with CIS, he was detained for being out of immigration status, and subsequently suffered humiliation, mental anguish, and bodily injury. Plaintiff claims:

> [T]he . . . malicious, slanderous and libelous remarks by Defendants about Plaintiff were immeasurably inflicting and fatiguing him emotionally as he was in incarcerated of the USCIS in Mississippi County Detention Center. . . . As a result of the Defendants outrageous conduct . . . Plaintiff suffered an anxiety induced heart seizure, resulting in severe heart pain and blackouts.

Pl. Mot. at ¶ 42, 44. Plaintiff thus states a claim for defamation, a state law tort. Because reputation is not a protected property interest, the alleged defamation does not violate the Fourteenth Amendment, and plaintiff cannot establish a cause of action under Section 1983.

To the extent the proposed amendment above seeks to state a claim for intentional infliction of emotional distress, the Court finds that it fails to do so. To establish intentional infliction of emotional distress, a plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted in an intentional or reckless manner; and (3) the defendant's acts caused plaintiff severe emotional distress that resulted in bodily harm." St. Anthony's Medical Center v. H.S.H., 974 S.W.2d 606, 611 (Mo. Ct. App. 1998) (citation omitted). "Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress." Central Missouri Elec. Co-op. v. Balke, 119 S.W.3d 627 (Mo. Ct. App. 2003). The extreme and outrageous requirement sets a high bar for plaintiffs:

> Liability has been found only where the conduct has been so
> outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community.
> . . . It must be beyond mere insults, indignities, threats,
> annoyances, petty oppressions, or other trivialities.

St. Anthony's Medical Center, 974 S.W.2d at 611 (citation omitted).

The Court determines whether the defendant's conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery." Id.

Plaintiff has not alleged that the sole reason for defendant's communication with CIS was to cause him emotional harm. Additionally, a Missouri court would not find that defendant's conduct rose to the extreme and outrageous level required to establish intentional infliction of emotional distress. To the extent plaintiff attempts to raise a claim under that tort, the allegation fails to state a claim.

Plaintiff urges the Court to allow him to conduct discovery on these issues. "If a plaintiff fails to assert a constitutional violation under the law as currently interpreted. . . the defendant is entitled to dismissal prior to discovery." Ripson v. Alles, 21 F.3d 805, 808 (8th Cir. 1994). (citations omitted). The Court will deny the plaintiff's motion to amend the complaint to add Count V.

**Count VI**

The proposed Count VI, titled "tortious interference," alleges that plaintiff had due process and property rights in proceedings before DHS and the Immigration Court, and defendant wrongfully, maliciously, and intentionally interfered with those proceedings.

11

Tortious interference occurs when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. . . . The right of action protects economic, property, and contractual rights." 44B American Jurisprudence 2d Interference § 1. To state a claim for tortious interference, "plaintiff must show: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. banc 2006).

The Court finds that plaintiff has not sufficiently alleged the existence of a valid business relationship or expectancy or the absence of justification. Therefore, the proposed Count VI fails to state a claim upon which relief can be granted, and the Court will deny leave to amend the complaint to assert Count VI.

For the reasons stated above, each of the plaintiff's proposed amendments would be futile.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to amend [# 17] is **denied.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of August, 2008.

- 12 -