UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALIREZA BAKHTIARI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:06-CV-1489 (CEJ) |
| | ) |
| GENE C. BEYER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendant's separate motions for summary judgment and to strike portions of plaintiff's declaration, statement of facts, and exhibits. Plaintiff opposes both motions.

Plaintiff Alireza Bakhtiari brings this action, asserting that certain statements made by defendant Gene C. Beyer to the United States Citizenship and Immigration Services (USCIS) constituted libel and slander. At the time of the alleged statements, the defendant was employed by the University of Missouri-Rolla as Assistant Director of its office of International Affairs. Plaintiff's claims are asserted against defendant in her individual capacity. Plaintiff seeks equitable relief in the form of an injunction requiring the defendant to submit a corrected letter to the USCIS.

### I. Motion to Strike

The defendant moves to strike portions of plaintiff's declaration and statement of undisputed material facts filed in opposition to the summary judgment motion. Defendant asserts that this evidence is inadmissible for a

number of reasons, including hearsay. In its evaluation of the evidence submitted by plaintiff in opposition to the motion for summary judgment, the Court will take into consideration the issue of admissibility. It is unnecessary to address this issue outside the context of the summary judgment motion. Therefore, the motion to strike will be denied as moot.

II. **Motion for Summary Judgment**

A. **Background**

Plaintiff Bakhtiari is a citizen of Iran, who entered the United States on January 10, 2002. He is a former Ph.D. student and employee of the University of Missouri-Rolla (UMR).[1] Defendant is the Assistant Director of the International Office at UMR. From 2003 through 2004, defendant supervised the international student advisors and front-desk personnel, implemented the Student and Exchange Visitor Information System (SEVIS), and translated new immigration regulations into the UMR system.

The SEVIS program is a computerized system designed to track and monitor international students. See 8 C.F.R. § 264.1(f)(5). The regulations, governing the SEVIS program impose reporting requirements on schools (including UMR) with respect to matters such as changes of address, enrollment, discipline of immigrant students. See 8 C.F.R. § 214.3(g)(3).

In addition to the reporting requirements, the regulations require participating universities to designate an individual to serve as the Principal

---

[1] The University of Missouri-Rolla was renamed Missouri University of Science and Technology, effective January 1, 2008.

Designated School Official (PDSO). 8 C.F.R. § 214.3(l)(ii). The regulations provide that:

> The PDSO is responsible for updating SEVIS to reflect the addition or deletion of all designated officials on his or her associated campus. The Service will also use the PDSO as the point of contact on any issues that relate to the school's compliance with the regulations as well as any system alerts generated by SEVIS.

Id. Failure of the PDSO to comply with the regulations can result in the withdrawal of the USCIS's approval of the school's admission of international students. See 8 C.F.R. § 214.4. In the instant case, defendant was the PDSO for UMR, and was thus the principal point of contact for the USCIS regarding any issues that related to the university's compliance with the regulations.

In a notice dated September 6, 2002, the Department of Justice (DOJ) determined that nationals or citizens of countries, including Iran, were required to register pursuant to 8 C.F.R. § 264.1(f). See Registration and Monitoring of Certain Nonimmigrants From Designated Countries, 67 Fed. Reg. 57032 (Sept. 6, 2002). As a citizen of Iran, plaintiff was subject to the registration requirements listed in the September 2002 notice, but he did not register.

On November 6, 2002, the DOJ issued another notice, informing "certain nonimmigrant aliens to appear before, register with, and provide requested information to the Immigration and Naturalization Service on or before December 16, 2002." See Registration of Certain Nonimmigrant Aliens From Designated Countries, 67 Fed. Reg. 67766 (Nov. 6, 2002). The November 2002 notice defined "certain nonimmigrant aliens [as] nationals or citizens

3

from Iran, Iraq, Libya, Sudan or Syria who were inspected and last admitted to the United States on or before September 10, 2002." Id. The notice provided that "[a] willful failure to comply with the requirements of this Notice constitutes a failure to maintain nonimmigrant status under section 237(a)(1)(C)(i) of the Act, 8 U.S.C. 1227(a)(1)(C)(i)." Id. As a citizen of Iran, plaintiff was subject to this notice, but he did not register.

In a notice dated January 16, 2003, the DOJ notified unregistered nonimmigrants to register between January 27, 2003 and February 7, 2003. See Permission for Certain Nonimmigrant Aliens From Designated Countries to Register in a Timely Fashion, 68 Fed. Reg. 2366 (Jan. 16, 2003). After the February 7, 2003 deadline, plaintiff discovered that the UMR-IA had sent an email informing international students of this special registration. Plaintiff was subject to the special registration because he had not registered in accordance with the previous notices. However, he failed to register in accordance with the January 16, 2003 notice as well. Plaintiff informed defendant that he had not received the email regarding the special registration. According to plaintiff, defendant apologized and explained that her office did not have a complete database for the immigrant students.

On August 13, 2003, UMR issued a news release stating that the office of International Affairs had met the deadline for complying with the new SEVIS regulations. Plaintiff states that he subsequently met with the defendant and told her that the news release was inaccurate, because plaintiff's information was missing from the SEVIS reporting.

In several meetings, plaintiff and defendant discussed plaintiff's failure to re-register by the February 7, 2003 deadline. According to plaintiff, "[t]he purpose of the meetings was to prepare documents and proof for the USCIS and Immigration and Customs Enforcement (ICE) that [plaintiff] was a student properly in the United States and enrolled at the University of Missouri-Rolla."[2] (Doc. #58, Plaintiff's Declaration, ¶8). On January 21, 2004, plaintiff informed defendant that he intended to visit the USCIS office in St. Louis the next day. On January 22, 2004, plaintiff and his legal representative Isabel Siedband met with Immigration and Naturalization Services (INS) Agent Othic at the St. Louis USCIS office.

On January 22, 2004, INS issued a Warrant for Arrest of Alien, which Agent Othic served on plaintiff on January 23, 2004. On January 23, 2004, INS also issued plaintiff a Notice to Appear, informing him to appear for removal proceedings pursuant to section 240 of the Immigration and Nationality Act. The Notice to Appear contained a charge that plaintiff was "subject to removal from the United States pursuant to . . . Section

---

[2] In his declaration, plaintiff states:

My purpose was to present to USCIS and ICE that my omission in Special Registration in January 2003 was because of my lack of knowledge of such requirement and was not to intentionally oppose the regulations and requirements. As Ms. Beyer stated to me, her purpose was to present ICE and the USCIS that the infrastructure at UMR was not finished and that Ms. Beyer had not missed 8 CFR 214.3 and 8 CFR 214.4 and SEVIS requirements intentionally or recklessly.

(Doc. #58, Plaintiff's Declaration, ¶9).

237(a)(3)(A) of the Immigration and Nationality Act . . . by failing to notify the Attorney General of [his] current address or failing to furnish additional information required by the Attorney General pursuant to 8 C.F.R. [§] 264.1 (F)(4)." (Doc. #48-2, at 23).

Also on January 22, 2004, the INS issued a Notice of Custody Determination, which set plaintiff's bond at $10,000. Id. The notice informed plaintiff that he could seek review of the INS's custody determination before an immigration judge. Plaintiff requested an immediate hearing before an immigration judge. (Doc. #48-2, at 26).

On January 26, 2004, defendant wrote a letter to Agent Othic, stating, in material part:

> I would like to take this opportunity to respond to your request for information regarding Alireza Bakhtiari, UMR student from Iran.
> . . .
>
> He visited our office several time [sic] to make sure that he was NOT listed on our listserve and would not be added. On October 16, 2003, Mr. Bakhtiari met with Donald Keeney, International Student Coordinator, to inform Donald that he had not received our office's emails since he was not on our listserve. Donald reminded him that the information was also on our web, and available from other sources. Mr. Bakhtiari requested a meeting with Jeanie Smallwood, Director of International Office and me.
>
> During the conversation he stated that he was an applicant for PR status. He evaded the question of exactly where in the process he was. Finally, he told us that his "immigration lawyer" . . . advised him not to file the PR application at this time since he and his wife were separated. We tried to determine if it was a legal separation. He stated that his wife has returned to her parents, city of Cape Girardeau after she had filed a spousal abuse charge against him. He said that the charge stemmed from his physical abuse against her when she refused to have an abortion.

. . .

> Although Mr. Bakhtiari's outward posture is polite to the point of being servile, he easily erupts into unstable behavior that has caused concern across the UMR campus.
>
> - Complaints with campus police have been filed against him for predatory sexual harassment and stalking of young undergraduate girls at residence halls and Christian religious youth facilities.
>
> - He has endangered the well-being of students and staff in Chemistry labs by refusing to follow federally-mandated guidelines for safety and security.
>
> - He has intimidated and implicitly threatened faculty member [sic] of the Chemistry department. Staff and faculty are concerned about his retaliation against them.
>
> - At a campus discipline meeting in December 2003 in which he was being investigated for using campus computers for downloading violent pornography and stalking, his behavior was so violent that our police chief believed that physical actions may be required.
>
> - Since November 2003 campus staff and faculty regularly request police presence in meeting with him.
>
> Because of the suspicious and unstable combination of characteristics Mr. Bakhtiari has demonstrated our office believes that we should bring this student to your attention.

(Doc. #57, Exhibit 7).

On February 24, 2004, the removal proceedings before the immigration judge commenced. In his declaration, plaintiff states that his "deportation proceedings included almost 20 appearances before" the immigration judge, whereby his attorney presented evidence to refute defendant's written and oral communications with Agent Othic. (Doc. #58-Declaration, ¶31). Plaintiff further states that "[i]n mid-2006, the Immigration Court dismissed the charge

7

of failing to re-register, and [plaintiff] was granted leave to proceed to adjudicate [his] permanent residence application. In June 2007, the [Immigration] Court adjudicated [plaintiff's] permanent residence application and granted [him] permanent residence." (Plaintiff's Declaration, para. 30; Doc. #58, at 8).

B. <u>Legal Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. <u>Agristor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

### C. Discussion

Defendant moves for summary judgment on the libel and slander claims, asserting that her communications were protected by (1) absolute privilege under the judicial proceedings doctrine; (2) official immunity for communications with a federal agency; and (3) absolute immunity for a private citizen reporting a wrongdoing.[3]

### 1. Slander Claim

Plaintiff bases his slander claim on the alleged phone conversation between defendant and Agent Othic, which the latter reported in PSUMF-Exhibit 6. This exhibit contains hearsay statements, and as such it cannot be relied on to defeat a motion for summary judgment. See Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923 (8th Cir. 2004). Because this inadmissible evidence is the sole support for the plaintiff's slander claim, the defendant is entitled to summary judgment on that claim.

### 2. Absolute Immunity for Judicial Proceedings

Defendant first contends that the defamatory statements expressed in her letter are protected by the judicial proceedings privilege. Plaintiff,

---

[3] Defendant's request for summary judgment on plaintiff's intentional infliction of emotional distress claim is moot, as plaintiff was denied leave to assert this claim.

however, argues that this privilege does not apply because (1) no judicial proceedings were in progress when defendant faxed the letter and (2) defendant's defamatory statements were not relevant to the charge filed against plaintiff.

"It is the established law of Missouri that statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body." Li v. Metro. Life Ins. Co., Inc., 955 S.W.2d 799, 803 (Mo. Ct. App. 1997); Remington v. Wal-Mart Stores, Inc., 817 S.W.2d 571, 574 (Mo. Ct. App. 1991); Barchers v. Missouri Pacific Railroad Co., 669 S.W.2d 235, 238 (Mo. Ct. App. 1984).

"There is no precise definition of what qualifies as a 'judicial proceeding' for the purposes of the absolute privilege. . . . The term 'judicial proceeding' is employed in a flexible fashion to embrace any governmental proceeding involving the exercise of a judicial or quasi-judicial function . . . ." 2 Law of Defamation, Rodney A. Smolla, §§ 8:14-15 (2d ed. 2008). In the case at bar, there is no dispute that a judicial proceeding occurred. The parties dispute when the judicial proceedings commenced. Plaintiff argues that the judicial proceedings began on February 24, 2004, the date on which the removal hearing began. Defendant contends that the judicial proceedings began, at the latest, on January 22, 2004 when the Notice of Custody and warrant for plaintiff's arrest were issued.

As reflected in the Notice to Appear, on January 22, 2004, the INS initiated deportation proceedings against plaintiff, based on the charge that

plaintiff had violated the immigration laws by failing to appear for special registration by February 7, 2003. The Court finds that the judicial proceedings commenced when the INS issued the Notice to Appear. Thus, statements contained in the defendant's January 26, 2004 letter were made during the pendency of those proceedings.

The question remains whether the allegedly defamatory statements were relevant to the judicial proceedings and thus protected by the doctrine of absolute immunity. Under Missouri law, defamatory statements are absolutely privileged if they are "connected with, or relevant or material to the cause at hand or subject of inquiry, although maliciously and with knowledge of [their] falsity." Wright v. Truman Road Enterprises, Inc., 443 S.W.2d 13, 15 (Mo. Ct. App. 1969). "The rule of absolute immunity is founded . . . upon the principle that on certain occasions it is indispensable, or at least advantageous, to the public interest that persons should speak freely and fearlessly, uninfluenced by the possibility of being brought to account in an action for defamation." Laun v. Union Electric Co. of Missouri, 166 S.W.2d 1065, 1068 (Mo. 1943). Defendant argues that her statements "were connected with, pertinent to and relevant to the proceedings as they pertained to defendant's experience with plaintiff in the context of his immigration status, his statements, and his conduct on campus." (Doc. #48-4, at p. 11). Plaintiff argues that the defendant's statements in the letter to Agent Othic had nothing to do with the removal proceedings. Moreover, plaintiff argues that the USCIS "enforces

immigration laws [and] does not investigate and enforce matters like those Defendant Beyer falsely report[ed]." Id. at 18.

In removal proceedings, the immigration judge is required to determine "the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a. Provided that the alien is not deportable by reason of having been convicted of an aggravated felony (8 U.S.C. § 1227(a)(2)(A)(iii)) or for any of the reasons set forth in 8 U.S.C. § 1227(a)(4)(B), then the Attorney General may permit the alien to voluntarily leave the United States, either in lieu of being subject to removal proceedings under § 1229a "or prior to the completion of such proceedings." 8 U.S.C. § 1229c(a)(1). If removal proceedings have commenced, then voluntary departure may be permitted if the immigration judge enters an order to that effect and finds, *inter alia*, that "the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure." 8 U.S.C. § 1229c(4)(b)(1)(B).

As discussed above, the defendant's letter to Agent Othic was written during the pendency of removal proceedings against the plaintiff. Had the immigration judge determined that plaintiff was subject to removal, there remained the possibility that plaintiff could have sought voluntary departure. If that were the case, then plaintiff's moral character would have been a factor for consideration. The Court finds that the statements in defendant's letter regarding the charge of spousal abuse against plaintiff and regarding his behavior on campus were relevant to the issue of plaintiff's moral character.

12

Moreover, the plaintiff's claim that he made twenty appearances before the immigration judge in which he sought to refute the statements in the letter provides further support that the statements were of interest to and, hence, relevant to the removal proceedings. Thus, the Court concludes that the defendant's statements were absolutely privileged.

3.  **Official Immunity**

Defendant next asserts that the statements she made in the letter to Agent Othic are protected by official immunity. Plaintiff argues that this defense does not apply because the federal regulations do not authorize defendant's statements regarding matters beyond plaintiff's immigration status. This argument is without merit, as, for the reasons discussed above, the statements made in defendant's letter were within the scope of the issues involved in a removal proceeding.

Plaintiff also argues that malice defeats defendant's official immunity defense. The Eighth Circuit, in Bushman v. Seiler, 755 F.2d 653 (8th Cir. 1985), rejected the argument that "the wrongful nature" of defendant's defamatory letter sent to a federal agency defeated the defendant's official immunity defense. Id. at 656. The Eight Circuit wrote that "[s]uch a finding would unduly restrict the official immunity defense." Furthermore, the Eighth Circuit noted whether "a statement is alleged to be false or libelous does not necessarily deprive the official of immunity." Id. Thus, consistent with the ruling in Bushman, malice will not defeat the defendant's official immunity defense here.

In <u>Bushman</u>, the Eighth Circuit ruled that an individual enjoys official immunity from liability for defamatory statements made in the course of his employment if the person is "a governmental official . . . [and] the act complained of [has] a connection to his official duties sufficient to justify invoking the immunity." <u>Bushman</u>, 755 F.2d at 655. Here, it is undisputed that the defendant is a government official. The Court finds that her statements had a connection to her official duties.

In <u>Bushman</u>, the court wrote:

> Since [the defendant] is a federal official for at least some purposes, [official] immunity from common law tort liability for actions within the scope of his authority. Such actions must have been "within the outer perimeter" of [the defendant]'s line of duty for the immunity to apply. More specifically, "the act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not manifestly or palpably beyond his authority."

755 F.2d at 655 (internal citations omitted). As the PDSO, defendant was responsible for communicating matters to the USCIS regarding the university's international students. The allegedly defamatory statements were made only to USCIS and were relevant to the removal proceedings against plaintiff. The statements had some connection with the general matters committed to the defendant's control or supervision and were neither manifestly nor palpably beyond her authority as PDSO.

Plaintiff argues that defendant's communications with USCIS were limited by the requirements of the SEVIS regulations. However, the narrow view urged by plaintiff here was rejected by the court in <u>Murray v. Northrop</u>

14

Grumman Info. Tech. (NGIT), Inc., 444 F.3d 169, 175 (2d Cir. 2006). In that case, the court held that NGIT enjoyed official immunity from reporting to the Department of Justice and to INS concerns that the plaintiffs posed a terrorist threat. The Second Circuit found that defendant's report constituted a discretionary act. The court wrote that official immunity protected NGIT's defamatory statement although "there [were] no provisions in the . . . statute or regulations that instructed NGIT, as Program Administrator, on what to do with allegations that program participants may be threats to national security." Id.

For the foregoing reasons, the Court concludes that the defendant is entitled to official immunity from suit based on the statements in her letter to Agent Othic.

### 4. Absolute Immunity for Reports of Wrongdoing

Finally, defendant argues that, as a private citizen, her reporting of plaintiff's immigration status and his alleged wrongdoing to the immigration authorities was absolutely privileged. Missouri law recognize the reporting of criminal activity as a qualified privilege if made in good faith. Perdue v. Montgomery Ward & Co., 107 S.W.2d 12, 14 (Mo. 1937). However, more than one hundred years ago, the United States Supreme Court recognized such reporting as an absolute privilege:

> [I]t is the right of every private citizen of the United States to inform a marshal of the United States or his deputy of a violation of the internal revenue laws of the United States; that this right is secured to the citizen by the constitution of the United States . . .

In re Quarles, 158 U.S. 532, 537 (1895).

This right was recognized more recently in Mazanderan v. McGranery, 490 A.2d 180, 181 (D.C. App. 1984). In that case, the defendant wrote a letter to the Public Vehicles Division of the District of Columbia Department of Mass Transportation, complaining about the allegedly abusive behavior of the defendant, a taxicab driver. The letter described an incident that occurred between plaintiff and defendant, and it questioned plaintiff's immigration status. Id. The letter was forwarded to a police officer and to the INS. Id. Plaintiff subsequently brought an action for defamation based on the letter. The District of Columbia Court of Appeals held that the letter served as a complaint and its "publication by copy to the police officer and the INS was . . . absolutely privileged." Id. at 182. The court further noted that "[a]n independent absolute privilege exists with respect to information furnished to the INS concerning matters within its jurisdiction." Id., citing Quarles, 158 U.S. 532.

Here, defendant's statements were not in the nature of a "complaint" to the INS. Further, defendant has maintained that the statements were made within the scope of her responsibilities as the university's PDSO, not as a private citizen. Thus, the decisions in Quarles and Mazanderan are inapposite. However, the defendant is entitled to judgment as a matter of law regardless of whether her statements were absolutely privileged as reports of wrongdoing.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #48] is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion to strike [Doc. #63] is **denied as moot**.

**IT IS FURTHER ORDERED** that all other pending motions are **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2009.